IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES O'BRIEN,
      Plaintiff,

vs.                                                                  Case No.  5:04cv228/SPM/EMT

UNITED STATES, et al.,
      Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se and in forma pauperis, initiated this action on November 10, 2003, by filing a civil complaint in the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 2201, the statute creating the declaratory judgment remedy, 28 U. S. C. § 1336, and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Doc. 1, Attach. 1 at 2). Defendants filed a Motion to Dismiss or in the Alternative to Transfer Venue, which included a request to transfer the case to the United States District Court for the Northern District of Florida (Doc. 1, Attach. 19). Plaintiff responded in opposition to the motion (Doc. 6). On July 22, 2004, United States District Judge Huvelle granted Defendants' motion to the extent it sought a change of venue (*see* Doc.  1 at 7-8). The case was received by this Court on September 7, 2004. On April 23, 2005, Plaintiff filed a Motion for Status requesting clarification of the status of his case (Doc. 9).

I.      BACKGROUND

At all times relevant to this action, Plaintiff was a federal inmate incarcerated at the Federal Correctional Institution, Marianna, Florida ("FCI Marianna") (Doc. 1, Attach. 1, ¶ ¶ 7-9). He alleges that while confined there,  he was assigned cellmate Eason (*id.*, ¶ 7). Plaintiff alleges he informed Defendant Runyon, a counselor at FCI Marianna, that Eason had a history of violent

behavior at other correctional institutions, and Plaintiff requested that he or Eason be assigned to a different cell (*id.*).  Defendant Runyon denied Plaintiff's request on the ground that there was no indication in the records of the Bureau of Prisons (BOP) that Plaintiff and Eason should be housed separately, and if there had been a problem between the two inmates, the records would have indicated such (*id.*).  Four days later, on August 6, 2002, Plaintiff again requested a cell change from Defendant Runyon stating that he had attempted to get along with Eason, but he felt their continuing to share a cell would lead to "a problem" (*id.*).  Runyon again denied Plaintiff's request (*id.*).  Two days later, Plaintiff against requested a cell change from Runyon, and the request was again denied (*id.*).  Plaintiff then filed an informal grievance against Defendant Runyon (*id.*; Doc. 6, Ex. A, #1).

On August 9, 2002, Plaintiff informed Defendant Hall, a correctional officer at FCI Marianna, that Inmate Eason was violent and that Plaintiff had been seeking a cell change because he believed he was in danger (Doc. 1, Attach. 1, ¶ 7).  On August 15, 2002, Plaintiff informed Defendant Hall that the situation was "turning grave," and that Defendant Runyon was refusing to do anything (*id.*, ¶ 8).  Defendant Hall facilitated a meeting between Plaintiff and Defendant Castro, the Unit Manager (*id.*).  After Plaintiff explained the situation to Defendant Castro, Castro stated he would resolve the situation by the next day (*id.*).  Upon returning to his cell, Plaintiff was struck by Inmate Eason (*id.*).  Both inmates were placed in disciplinary segregation for fighting (*id.*).

Immediately after the attack, Plaintiff was taken to the medical department (*id.*, ¶¶ 9, 14).  Plaintiff informed Defendant Cee, the Health Administrator at FCI Marianna, that his back and neck were injured, and he was in severe pain (*id.*).  Plaintiff was diagnosed as having neck and back injuries (*id.*, ¶ 14).  Plaintiff alleges he did not receive pain medication until August 19, 2002, four days after the attack, however, it had no pain relieving effect (*id.*, ¶ 15).  Plaintiff complained to Defendant Henry, the Warden at FCI-Marianna, on August 23, 2002, that he was not receiving proper medical attention, and as a result, Plaintiff was prescribed a muscle relaxer and another medication (*id.*).  Defendant Morales, a physician's assistant at FCI-Marianna, gave Plaintiff Ibuprofen, a pain reliever (*id.*).  Additionally, Plaintiff was scheduled to receive x-rays, which he received on September 7, 2002 (*id.*, ¶ 16).

As a result of the altercation involving Plaintiff and Inmate Eason, Defendant Hall filed an incident report (*id.*, ¶ 10).  Plaintiff alleges the Notice of Disciplinary Hearing indicated that he

requested a staff representative and the opportunity to present witnesses; however, at the hearing, he was not allowed staff representation or the opportunity to present witnesses (*id.*, ¶ ¶ 10, 11). Defendant McBride, the Disciplinary Hearing Officer, found Plaintiff and Eason guilty of fighting and, as a result, Plaintiff was placed in disciplinary segregation for 30 days, lost 27 days of good time credit, and received an increase in custody level from 11 to 16 points, which resulted in his transfer from a medium to maximum security facility (*id.*, ¶ ¶ 12, 13).

Plaintiff claims Defendants denied him due process by refusing to provide staff representation and refusing to permit the presentation of witnesses at the disciplinary hearing (*id.*, ¶ 22).   Furthermore, Defendants violated his Eighth Amendment rights by punishing him for defending himself from Inmate Eason, failing to protect him, and failing to provide adequate medical treatment (*id.*).  Plaintiff seeks monetary damages for the time he spent in segregation, the forfeited good time credits, and physical and emotional injuries he suffered as a result of the alleged constitutional violations (*id.*, ¶ 24).  Additionally, he seeks injunctive relief in the form of recision of the finding of guilt and transfer to a medium security institution (*id.*).  Lastly, he seeks declaratory relief (*id.*).

II.     ANALYSIS

Because Plaintiff is proceeding in forma pauperis, this Court has a statutory duty to dismiss this action at any time if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a Defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B).  The court must read Plaintiff's pro se allegations in a liberal fashion.  Haines v. Cornier, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all facts set forth in the complaint as true.  *See* Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  The complaint fails to state a claim only when it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *See* Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 923 (11th Cir. 1997).  Because the language of section 1915 tracks the language of Fed.R.Civ.P. 12(b)(6), Rule 12(b)(6) standards apply in determining whether a Plaintiff's case is subject to dismissal under section 1915(e)(2)(B)(ii). *See* Mitchell v. Farcass, 112 F.3d 1483, 1487 (11th Cir. 1997).

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to all inmate suits about any aspect of prison life, including cases in which the inmate seeks only monetary damages.  *See* Booth v. Churner, 532 U.S. 731, 121 S.Ct.1819, 1825, 149 L.Ed.2d 958 (2001); Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).  Thus, the court should dismiss a case if it determines that exhaustion has not been accomplished.  Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998); *see also* Anderson v. Singletary, 111 F.3d 801, 805 (11th Cir. 1997).  "A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."  Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).

The BOP provides a four level administrative grievance procedure for prisoner complaints. 28 C.F.R. § 542.10-16.  Initially, a prisoner must seek resolution of issues through an informal grievance.  *See* 28 C.F.R. § 542.13(a).  If unsuccessful, an inmate may then file a formal written complaint with the institution (BP-9 request).  28 C.F.R. § 542.14(1).  The warden of the institution has twenty (20) days to respond to the complaint.  28 C.F.R. § 542.18.  If unsatisfied with the response, the prisoner may file an appeal with the Regional Director (BP-10 request).  28 C.F.R. § 542.15(a).  The Regional Director must respond within thirty (30) days.  28 C.F.R. § 542.18. Finally, an inmate may appeal the Regional Director's response to the General Counsel for the BOP (BP-11 request).  28 C.F.R. § 542.15(a).  The General Counsel has forty (40) days to respond.  28 C.F.R. § 542.18.   Each of these steps is generally required to satisfy the exhaustion prerequisite; however appeals of decisions of the Discipline Hearing Officer (DHO) must be initially submitted to the Regional Director.  Bureau of Prisons Program Statement § 542.14(d)(2).

When an inmate demonstrates a valid reason for a delay in filing administrative appeals, the time limits may be extended.  Bureau of Prisons Program Statement § 542.15(a).  Valid reasons for delay include:  an extended period in transit during which the inmate was separated from documents needed to prepare the appeal; an extended period of time during which the inmate was physically

incapable of preparing an appeal; an unusually long period taken for informal resolution attempts; and indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions of requests and appeals was delayed.  *Id.*

In the instant case, although Plaintiff alleges in his complaint that he exhausted his administrative remedies (Doc. 1, Attach. 1, ¶ 5), and while Plaintiff submitted numerous grievances in an effort to demonstrate exhaustion, Plaintiff has failed to demonstrate he exhausted  his claims regarding the disciplinary hearing and resulting disciplinary action.  The grievances submitted by Plaintiff show that he submitted an administrative appeal to the Regional Director, which was denied on October 28, 2002 (Doc. 6, Ex. A, #2, Administrative Remedy Appeal, dated September 10, 2002 (including Response)).  Plaintiff appealed the denial to the Central Office, however, it was rejected on two grounds:  (1) Plaintiff failed to attach a copy of his appeal to the Regional Director and the response thereto, and (2) the appeal was untimely (Doc. 6, Ex. A, #2, Rejection Notice dated December 10, 2002).  Plaintiff was advised that his appeal would be considered despite its untimeliness if he submitted verification from BOP staff that the untimeliness was not his fault (*id.*).  Plaintiff then submitted another appeal to which he attached a copy of his appeal to the Regional Director and the Director's response; however, it was again rejected for failing to submit verification that the untimeliness was not his fault (Doc. 6, Ex. I, Letter to General Counsel dated December 19, 2002; Ex. A, #2, Amendment To The Administrative Remedy BP-11 Appeal dated December 26, 2002; Rejection Notice dated December 31, 2002).  Plaintiff apparently submitted a third appeal; but it was again rejected as untimely (*id.*, Rejection Notice dated February 10, 2003).

Plaintiff submitted an affidavit stating he received the original rejection notice from the General Counsel on November 22, 2002, and was thus prevented from filing a timely appeal by November 27, 2002 (Doc. 6, Ex. I, Affidavit of James O'Brien).  He states the rejection notice was attached to a receipt issued by the Regional Director on November 21, 2002, verifying receipt of Plaintiff's appeal to the Regional Office (*see* Doc. 6, Ex. A, #2, Receipt - Administrative Remedy, dated November 21, 2002).  However, even if Plaintiff received the rejection from the Regional Director on November 22, he waited until December 3, 2002, six days beyond the deadline, to draft his appeal (Doc. 6, Ex. A, #2, Administrative Remedy Appeal dated December 3, 2002).  It is plainly evident Plaintiff failed to fully exhaust those administrative remedies available to him in relation to

his appeal of the DHO decision.  Therefore, his due process claims against Defendant McBride, the Disciplinary Hearing Officer, must be dismissed.

Additionally, Plaintiff's claims against Defendants United States of America, Bureau of Prisons, Warden Henry, and Associate Warden Willingham should be dismissed, as Plaintiff has failed to state a basis for liability as to these Defendants.  Plaintiff apparently seeks to hold them liable on a respondeat superior theory of liability.  It is well established that supervisory officials are not liable under section 1983 or Bivens for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994).  The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur.  *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996).  Supervisors are generally entitled

to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  <u>Cottone</u>, 362 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege Associate Warden Willingham personally participated in the alleged unconstitutional conduct; and his only allegation concerning Warden Henry is that Plaintiff began receiving proper medical attention after he spoke to the Warden (Doc. 1, Attach. 1, ¶ 15).  Furthermore, Plaintiff does not allege Warden Henry or Associate Warden Willingham directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  Nor does Plaintiff allege the existence of a history of widespread abuse that put these Defendants on notice of the need to correct the alleged deprivation, and they failed to do so.  Likewise, Plaintiff does not allege the existence of a custom or policy of the United States, BOP, or FCI-Marianna that resulted in deliberate indifference to Plaintiff's constitutional rights.  Therefore, his claims against Defendants United States of America, Bureau of Prisons, Warden Henry and Associate Warden Willingham should be dismissed.

Accordingly, it is **ORDERED**:

Plaintiff's Motion for Status (Doc. 9) is **DENIED** as moot.

And it is respectfully **RECOMMENDED**:

1.      Plaintiff's claims concerning the disciplinary action taken against him (Incident Report #1019675) be **DISMISSED**, and Defendant G.E. McBride be dismissed from this action.

2.      Plaintiff's claims against Defendants United States of America, Bureau of Prisons, Warden Henry, and Associate Warden Willingham be **DISMISSED** and these Defendants be dismissed from this action.

3.      This matter be referred to the undersigned for further proceedings.

At Pensacola, Florida, this <u>17th</u> day of June 2005.


                                        */s/ Elizabeth M. Timothy*
                                        **ELIZABETH M. TIMOTHY**
                                        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).